### G. W. JEFFERS v. THE STATE.

No. 10139.    Delivered April 28, 1926.

**1.—Rape—General Reputation—Impeachment—Held Proper.**

It is well settled law in this state that when an accused is on trial, and testifies in his own behalf, it is permissible for the state to impeach him by proof that his general reputation for truth and veracity, in the community in which he resides, is bad, and there was no error in admitting such proof in this case.

**2.—Same—Continuance—Properly Refused.**

Where, on a trial for rape, the act of intercourse being shown to have resulted in the birth of a child, appellant's subsequent application for a continuance, to secure the attendance of a physician, and also of his wife

and daughter, by whom he averred he could prove that he was sterile, and therefore could not be the father of prosecutrix' child, was properly refused, it being shown that the absent physician was dead, and proper diligence not having been shown to secure the attendance of the wife and daughter. See Barrett v. State, 18 Tex. Crim. App. 69, and other cases cited.

### 3.—Same—New Trial—In Discretion of Court.

Where, in his motion for a new trial, based on the refusal of a continuance, which was controverted by the state, the appellant does not attach affidavits, nor present testimony in support of his averments in his application, and no subpœnaes are attached showing that diligence was used to secure the attendance of such absent witnesses, we do not feel authorized to assert that in refusing to postpone or continue the case, the learned trial judge abused the discretion vested in him by law.

### 4.—Same—Continuance—Subsequent Application—Practice in Trial Court.

Where an application for a continuance, or postponement, is presented to the trial court, and the application is denominated as a supplemental application, it will be considered not as the first, but as a subsequent application. Following Ferguson v. State, 276 S. W. 919.

### 5.—Same—Continuance—Practice in Trial Court—Rule Stated.

The probability of obtaining the absent testimony, for which a continuance is requested, or its equivalent, upon another trial and that the result of a new trial, by reason of securing the alleged absent testimony would probably be more favorable to the accused, are matters for the consideration of the trial judge, and in the absence of abuse of his discretion, the conclusion reached by him is not to be overturned on appeal. See Vernon's Tex. Crim. Stats., Vol. 2 (1922 Supp.), Art. 608; Hunter v. State, 59 Tex. Crim. Rep. 439, and other cases cited.

Appeal from the District Court of San Saba County. Trial below before the Hon. J. H. McLean, Judge.

Appeal from a conviction of rape, penalty life imprisonment in the penitentiary.

The opinion states the case.

*Calloway & Calloway* of Comanche, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for rape; punishment fixed at confinement in the penitentiary for life.

According to the testimony of Kizzie Washburn, she was thirteen years of age at the time of the trial. She resided with her widowed mother on a farm. Appellant lived in the same house and slept in the same bed with the mother of the prosecutrix. The prosecutrix testified that the appellant persuaded

her to consent to sexual intercourse and that they had engaged in the act a number of times. She finally became pregnant and gave birth to a child. She disclaimed any sexual relations with anyone else. Two sisters of the prosecutrix testified that at the time of the trial they had married, but before their marriage they had resided with their mother and the appellant. They also testified that their mother and the appellant slept together, and one of them testified that the appellant had sought to have improper relations with her. The family lived in a remote place, and according to the testimony, had lived rather an isolated life. The mother of the prosecutrix testified that the appellant was seeking a divorce from his wife and the intention of the appellant was to marry the witness as soon as he had obtained a divorce from his wife. According to her testimony, when the condition of the prosecutrix was discovered, the mother endeavored to ascertain the cause, and the daughter denied sexual relations with anyone. At no time did she claim that the appellant was responsible for her condition. The mother claimed that the appellant's conduct was like a father to the children of the witness. The mother expressed her disbelief in the guilt of the appellant. She said she loved him and wanted to see him acquitted. She gave some testimony indicating that a boy named Shipp had had some association with the prosecutrix and opportunity to be the author of her ruin. The girl denied any sexual relation with Shipp. Shipp was also called as a witness and testified to the same effect. The mother intimated that other boys at times associated with her daughter. Appellant testified as a witness and denied in detail the truth of the story of the prosecutrix. Against the appellant and the mother was pending, at the time of the trial, a charge of adultery. One sister of the prosecutrix supported her testimony denying her association with Shipp. There was testimony tending to impeach the reputation of the appellant for truth and veracity.

There are three bills of exception in the record, one complaining of the refusal of the court to continue the case, one of the refusal of the court to amend his charge, and one complaining of the introduction of impeaching evidence to the effect that appellant's reputation for truth and veracity in the community in which he lived was bad. Appellant having testified as a witness in his own behalf, there can be no question of the soundness of the court's ruling on the question of re-

ceiving testimony touching his general reputation for truth and veracity.

A continuance was sought on account of the absence of Mrs. Jane Jeffers of Brown County, and Dr. Will Pannill of Navarro County. The indictment was returned on the 18th of November; subpoena issued for Dr. Will Pannill on the 19th of that month, and the trial took place on the 30th thereof. On the 19th of November, a subpoena was also issued for Mrs. Jane Jeffers, and according to averments in the motion, was served on her. Dr. Pannill seems to have been dead at the time of the trial and there was no service upon him. The date of the death of the witness is not revealed, but it is averred in the motion that the death of Dr. Pannill was unknown to the defendant at the time of the issuance of said subpoena. The purpose of Dr. Pannill's testimony was to show that appellant was sterile and incapable of producing conception; that this condition had existed for twenty-three years and that same was due to the mumps; that at the time appellant had a relapse from a case of mumps, Dr. Pannill was his physician.

By Mrs. Jane Jeffers, appellant sought to prove that she was his wife or had been his wife; that before he suffered with the malady mentioned, she had borne him several children; that they had been married for thirty-eight years. The children were all born more than twenty-three years before the trial. By her testimony appellant sought to show that she was a young woman twenty-three years ago; that she was healthy and in proper condition, and had conceived and borne children to the appellant up to that time; that since such time she has borne no children, though her condition of health and her age were such at that time and thereafter as that she would have conceived and borne children had the appellant not been sterile.

By his daughter, Mrs. Sawyer, also mentioned in the application, appellant sought to prove that her mother's health was good during the twenty-three years in which she had borne no children.

With the appellant's consent, an examination was made by physicians appointed by the court. The report, under oath, of the three physicians appointed contained the following:

"In our opinion, after a careful examination, we believe that the said G. W. Jeffers is physically able to perform the copulative act, or a normal act of intercourse, and we find his external genitalia in apparent normal condition for a man of his age.

"We would further state that it would be impossible to deter-

mine the sterility of this man's semen without a microscopic examination of a specimen of his semen, an examination of which character we are, at this time, not in position to make."

In the motion for continuance there is an averment to the effect that medical experts had informed appellant that the question of his sterility could be absolutely determined but that the experiments necessary would require thirty days. In overruling the application for a continuance, the court calls attention to the fact that when the motion for a continuance was presented, the court suggested the examination mentioned and the appellant consented and expressed a desire that it be made. The court also calls attention to the fact that in the testimony of the appellant nor otherwise upon the trial was there given any evidence of his sterility or that he was incapable of performing the act of copulation. The court concludes that in view of this silence, the absent testimony would have no bearing upon the material issues in the case.

The averments of fact in the motion to continue were controverted in writing by the District Attorney. Whether evidence was heard on the motion is not revealed. From the controverting statement it appears that the first application for a subpoena for Mrs. Jeffers was made on the 27th day of November, two full days before the trial. We infer from the controverting statement that a subpoena had not been served. The fact that thirty days would be required within which to determine whether the appellant was sterile was also controverted, and the proposal was made that appellant submit to an examination by local physicians to which, as above stated, he consented, with the result to which reference has been made.

Touching the merits of the application as relates to Dr. Will Pannill, the following observations were made: The application reveals that twenty-three years antecedent to the trial, Dr. Pannill had treated the appellant and gave him information to the effect that he was permanently sterile. The residence of Dr. Pannill, as stated in the application, was at Corsicana, Navarro County, Texas. Whether at any time during the twenty-three years mentioned appellant had seen or had knowledge of Dr. Pannill, or had at any time made any effort to discover whether he was dead or alive, the application is silent. It only states that the subpoena was not served because Dr. Pannill was dead, a fact which was unknown to the appellant at the time of the issuance of the subpoena. It refers to information since received from Judge Pannill, of Eastland, a son of Dr.

Pannill, and gives no information as to when the appellant communicated with Judge Pannill. The averments in the motion are not deemed sufficient to require a continuance because of the death of Dr. Pannill. Moreover, his testimony manifestly could not have been available upon another trial.

Another averment in the motion, the truth of which was controverted, as above stated, is to the effect that the appellant had been informed by medical experts and doctors that the question of his sterility is a matter which could be absolutely determined. According to his averment, this would require a daily examination for four days, and the finding of a sterile condition upon each examination, and the further examination once a week, the whole covering a period of thirty days. With this knowledge, appellant in his motion makes no explanation of his failure to take steps looking to the ascertainment of his condition and proof thereof antecedent to the trial. From his averment, it would be essential that each examination show the evidence of his sterility. There is an absence of evidence, by averment or testimony, that such an examination had been made or attempted. However, it does appear that the examination made at the time of the trial by the physicians appointed with the consent of the appellant, while admittedly incomplete, as far as it went was adverse to the appellant's contention. Appellant, in his testimony, failed to give the jury the benefit of his knowledge and information upon the subject of his sterility. He failed to testify to the alleged facts which he expected to prove by his wife and daughter. Their testimony, according to the averment, were but cumulative of his and apparently desiring to depend upon the issue, it would have been expected at least that, being forced to trial, he would give the jury the testimony at his command upon the subject of his defense. After the report of the physicians appointed by the court was made, there appears to have been no renewed effort to postpone for further examination. Upon the hearing of the motion for new trial, we find no testimony or affidavits from the alleged absent witnesses or others going to support the averment in the application upon the question of sterility or diligence. The motion refers to subpoenaes, but these are not attached, and as above stated, their issuance in accord with the appellant's motion to continue is controverted.

Viewing the motion to continue in the light of the evidence, adduced upon the trial, we do not feel authorized to assert that in refusing to postpone or to continue the case, the learned trial

judge abused the discretion which was vested in him by law. The application is denominated as a supplemental application and will therefore be treated as not the first but as a subsequent application. See Ferguson v. State, 276 S. W. 919. In reviewing the action of the trial court in refusing the application for a continuance, there should be an affirmative showing of due diligence or a satisfactory excuse for the want of it. See Barrett v. State, 18 Texas Crim. App. 69, and other cases collated in Vernon's Texas Crim. Stat., Vol. 2, p. 307. The probability of obtaining the absent testimony or its equivalent upon another trial and that the result of such trial, by reason of securing the alleged absent testimony would probably be more favorable to the accused are matters for the consideration of the trial judge, and in the absence of abuse of his discretion, the conclusion reached by him is not to be overturned on appeal. See Vernon's Texas Crim. Stat., Vol. 2, (1922 Supplement), Art. 608, Subd. 6, note 32; Hunter v. State, 59 Texas Crim. Rep. 439; Russell v. State, 228 S. W. 948; Brown v. State, 85 Texas Crim. Rep. 619; Morse v. State, 85 Texas Crim. Rep. 88; Keel v. State, 84 Texas Crim. Rep. 43.

The judgment is affirmed.

*Affirmed.*